## REINHART & DONOVAN CO. v. GUARANTY ABSTRACT CO. et al.

No. 32912.   March 8, 1949.
Rehearing Denied May 3, 1949.

*205 P. 2d 881.*

Twyford, Smith & Crowe, of Oklahoma City, for plaintiff in error.

Bush, Gable & Gotwals, of Tulsa, for defendants in error.

LUTTRELL, J.   This action was brought by the Reinhart & Donovan Company, plaintiff, against the defendants, Guaranty Abstract Company and National Surety Corporation, surety on the bond of the abstract company. The case was tried to the court without a jury, and judgment rendered for defendants. Plaintiff appeals.

Plaintiff's petition alleged the purchase of certain real property in Tulsa county by it in 1938; the preparation of an abstract covering said property by the abstract company; that the abstract company prepared and incorporated in the abstract certificates

which were erroneous in that they did not reflect the true state of the records of the county treasurer of Tulsa county relating to taxes for the years 1931, 1932, and 1935; that because of the error in the certificates, which showed that all taxes against the property purchased had been paid, plaintiff did not deduct the amount of the taxes and penalties actually due from the purchase price it paid for the property, and was therefore damaged in the approximate sum of $7,000, which sum it sought to recover from the abstract company and the surety on its bond. Thereafter, by amendment to its petition, plaintiff alleged the payment of the taxes due and asked for judgment against defendants for the amount actually paid by it.

In their answers the defendants, among other defenses, set up the defense of res judicata and estoppel by judgment, alleging that by reason of a judgment rendered in the United States District Court for the Northern District of Oklahoma, and affirmed by the Circuit Court of Appeals for the Tenth Circuit, in National Life & Accident Insurance Co. v. Parkinson, County Treasurer of Tulsa County, Guaranty Abstract Company, a corporation, and National Surety Corporation, a corporation, 136 Fed. 2d 506, the matters sought to be litigated in the instant case had been determined in favor of defendants, and that plaintiff was bound thereby. The judgment of the trial court in the instant case was based solely upon its finding and conclusion that plaintiff was estopped by the judgment in the federal case.

From the evidence it appears that prior to the time plaintiff acquired the property involved, the county commissioners had reduced the tax valuations of the property for the years 1931, 1932, and 1935, pursuant to the provisions of article 14, ch. 66, S. L. 1937, and the county treasurer showed on his records that the taxes for those years had been paid in full. The certificate of the abstract company made to plaintiff re-

cited that the records of the treasurer so showed. Subsequent to the acquisition of the property plaintiff, in 1939, mortgaged it to National Life & Accident Insurance Company. At that time the abstract company recertified the abstract, showing all taxes paid.

In 1940 this court, in State ex rel. Tharel v. Board of County Commissioners of Creek County, 188 Okla. 184, 107 P. 2d 542, held that the reduction of valuations pursuant to said Act was illegal and void, and that it was the duty of the county officials, where such reductions had been made, to restore the original valuations and taxes due so that the same would be reflected by the county records, and to collect the delinquent taxes shown by the corrected records to be due. After the decision in that case the county treasurer of Tulsa county changed the records to show a portion of the taxes against the property acquired by plaintiff delinquent for 1931, 1932, and 1935.

The evidence further shows that after plaintiff was advised that the records of Tulsa county showed that the taxes were delinquent as above stated its attorneys wrote to the agent of the mortgagee the following letter under date of August 9, 1941:

"Mr. R. D. Cravens,
"132 N. W. First Street,
"Oklahoma City, Oklahoma.

"Re: Lot 7, Block 117, Original Town of Tulsa—K. C. Auto Hotel.

"Dear Sir: We represent The Reinhart & Donovan Company, the owners of the above property. On September 25th, 1939, that company executed to you a note for $85,000.00, secured by a mortgage on the real estate. You transferred the note and mortgage to The National Life and Accident Company on October 22nd, 1939.

"Our clients purchased this property relying on an abstract and certificate prepared by the Guaranty Abstract Company of Tulsa, Oklahoma, which had filed an abstracter's bond, executed by the National Surety Cor-

poration. Evidently both you and the National Life and Accident Company relied on the same abstract and the same, and later, certificates made by the same company. This abstract and the respective certificates recited that the records of the county treasurer showed all taxes assessed to have been paid in full. The records actually showed that on September 21st, 1937, a certificate of reassessment, executed by the Board of County Commissioners of Tulsa County had been filed with the county treasurer by J. P. Norton, receiver, which certificate reduced the assessed value of the property for the years 1931, 1932 and 1935. This operated to reduce the taxes for these three years in the total reduction of over $4,300 plus penalties. He then paid the reduced amount (some $9,000.00) and did not pay the $4,300.00. None of this was reflected by the abstract. However, it now seems that the matter of the assessment of the real estate for those years was pending in an action in the District Court entitled J. P. Norton, Receiver, vs. Tulsa County, No. 64801-2 and on September 8th, 1937, an order had been entered in that case approving the reduction of the assessment and the taxes. Before paying the taxes in the reduced amount the receiver also procured an order from the court appointing him. This order approved the proposed settlement and payment. None of these proceedings and orders were reflected by the abstract.

"On November 19th, 1940, the Supreme Court of Oklahoma in the case of State ex rel. vs. Board of County Commissioners of Creek County, No. 29511, 107 P. 542, declared unconstitutional (page No. 2) the act of the Legislature which had authorized the re-assessment made by the county commissioners. This also declared that the Board of County Commissioners is not a court and its orders not res judicata. About January 1st, 1941, the county treasurer of Tulsa County, cancelled on his records, the payment of taxes made on this property. He now shows a balance of taxes due for 1931, 1932 and 1935 in the amount of more than $4,300.00 together with additional penalties. No order of the Board of

County Commissioners or of any court directed him to make this entry. The Reinhart and Donovan Company learned of this action about three weeks ago. Since then we have obtained certified copies of all the records of the County Clerk and County Treasurer of Tulsa County pertaining to this transaction. We have also briefed the legal points involved.

"This case may be distinguished from the Creek County case on account of the orders made by the District Court of Tulsa County approving the settlement and payment.

"The most effective method by which to settle this question would be to bring a civil action in the United States District Court for the Northern District. The object of this action would be to obtain a declaratory judgment determining the status of the disputed taxes. If determined that they have been fully paid an appropriate judgment would be entered. If determined to be not paid then an alternative judgment could be rendered against the abstract company, and its surety, for the amount of the taxes and expenses of litigation.

"The Reinhart & Donovan Company is an Oklahoma Corporation. The Abstract Company is an Oklahoma Corporation. The National Surety Corporation is a New York Corporation. The county treasurer is a citizen of Tulsa County, Oklahoma.

"The only manner in which the Federal court could acquire jurisdiction would be to institute a civil action with the National Life and Accident Insurance Company as plaintiff and The Reinhart & Donovan Company the Abstract Company, the Surety Company and the treasurer as defendants.

"The Reinhart & Donovan Company desires to have this action brought under its supervision, by its attorneys, but at its expense. If will, of course, protect the mortgagee from any loss or expense.

"Awaiting your advice, we are,
"Sincerely yours,
"Twyford & Smith,
"By (Signed) Solon W. Smith."
"SWS: SM

This letter was transmitted to the insurance company by its Oklahoma City agent. The insurance company, after giving the matter due consideration, wrote a letter to its agent requesting him to advise Twyford & Smith that it was satisfactory with it that the suit be brought as outlined in their letter above quoted, provided the insurance company would be protected from loss or expense, and requesting him to obtain from the attorneys, and from plaintiff in the instant case, letters stating that they would protect the insurance company from loss or expense by reason of said suit. Thereafter, by letters direct to the insurance company, the attorneys and plaintiff both advised the insurance company that they would protect it from any loss, expense or attorneys fees incurred by reason of the contemplated action, the letter of plaintiff being as follows:

"Re: Loan No. 7761—The Reinhart & Donovan Company—

"K. C. Auto Hotel, Tulsa, Okla. "Gentlemen:

"In connection with the action to be brought in the United States District Court for the Eastern District with your company as plaintiff, involving the property covered by the above loan, beg to advise that we will protect your company from any loss, expense or attorneys fees incurred by reason of said contemplated action.

"Yours very truly,

"The Reinhart & Donovan Company "By (signed) W. J. Reinhart
President"
"WJR: er

Pursuant to permission so received from the insurance company, the firm of Twyford & Smith, which, according to the evidence, had represented the Reinhart & Donovan Company for some 20 years, brought the action in the Federal Court on behalf of the insurance company. The defendants named therein were Joe T. Parkinson, county treasurer of Tulsa county, the Reinhart & Donovan Company, Guaranty Abstract Company and National Surety Corporation, its surety. No cause of action was stated against the Reinhart & Donovan Company, and no relief was asked as to it. The petition in that case, after setting forth the mortgaging of the property and the certificate of the abstract company, recited that the records of the county treasurer showed that the property had been revalued and reassessed for the years above stated; that the certificate of the abstract company failed to show the facts, and was therefore erroneous. The petition asked for judgment against the county treasurer declaring the revaluation and reassessment of the property valid; requiring the county treasurer to restore his records to show all taxes paid, and enjoining him from offering the lands for sale at tax sale. In the alternative it asked for judgment against the abstract company and its surety for taxes due on said property for the above mentioned years, and for its reasonable expenses and attorney's fees. Thereafter the petition was amended to amplify the cause of action against the county treasurer.

Answers were filed by the abstract company and its surety, alleging that the abstract company's certificate was in all respects proper and made in accordance with the usual custom prevailing at that time. The trial court in that case found that the records of the county treasurer reflected the assessed valuations as determined by the actions of the county commissioners, and disclosed that all taxes against the property for the three years in controversy had been paid, and that therefore the certificate of the abstract company correctly disclosed the facts with reference to all information that the certificate pretended to disclose; that careful and skillful abstracting methods did not require the abstract company to make a verbatim showing of the records of the various offices certified to, but required only an abstract of the record, and that the universal custom and practice of abstracters on the date

of that certificate was to show the taxes merely as reflected by the records of the county treasurer. It denied any relief against the abstract company or its surety.

Upon the appeal, the Circuit Court of Appeals affirmed the judgment of the lower court, holding that the statutes did not require the abstracter to include in an abstract a transcription of all instruments and records pertaining to the property, such as administrative steps in making levies and assessments of taxes, or in making corrections in respect to valuations and resulting reductions in taxes. It held that the certificate furnished to the insurance company completely and accurately reflected all it purported to reflect, and that the abstracter was not liable for a subsequent correction of the records of the county treasurer after the abstract had been compiled and furnished.

Plaintiff adduced evidence tending to show that plaintiff did not have anything to do with the bringing of the action in the Federal Court, and did not exercise any supervision or control whatever over it; however, Mr. Marshall, an employee of plaintiff, and its managing agent in the line of its business for which the property in Tulsa was procured, testified that after he discovered the tax situation he turned the matter over to plaintiff's attorneys, Twyford & Smith, "at the instruction of my company", and that this was shortly before the filing of the action in the Federal Court. He testified that after the matter was turned over to them, Twyford & Smith had full authority to act in the matter with due collaboration with the company, and that he, Marshall, acted as collaborating agent for plaintiff. In response to questions by attorneys for defendants he testified as follows:

"Q. No. I am asking you about any other agent or representative that had authority to handle the matter on behalf of Reinhart & Donovan. A. No. Q. The matter has been solely in the hands of Twyford & Smith, with your collaboration, ever since? A. Right."

Mr. Killebrew, attorney for the insurance company, testified that the lawsuit in the Federal Court was conducted so far as he knew at the expense of Reinhart & Donovan; that his company did not bear any of the expenses of litigation or attorney's fees, and that so far as he knew the insurance company had no interest in the action, because it was not concerned whether it would sustain a financial loss; that it did not exercise any supervisory control over the litigation, and did nothing in connection with that lawsuit, except to allow the use of its name. He further testified that the insurance company had never agreed to pay the firm of Twyford & Smith any fees in connection with the action in the Federal Court.

Mr. Henry, acting manager of the investment department and associate general counsel for the insurance company, testified that the Federal Court action was prosecuted by attorneys for Reinhart & Donovan under their supervision and at their expense because of their request to be allowed to do so.

Plaintiff contends that the trial court erred in holding that the judgment in the case in the Federal Court operated as an estoppel by judgment so as to preclude its right to recover in the instant case, for two reasons: (a) that the issues in the federal case and in the instant case are not identical, and (b) that it did not have control and supervision over the case in the Federal Court, and did not openly prosecute and control that case to the knowledge of the defendants therein.

As to the reason first above stated they call attention to the fact that the action in the Federal Court was upon a certificate by the abstract company, made to the insurance company, dated October 4, 1939, and was for a declaratory judgment, and that in the instant case the action is for damages against the abstract company and its surety

on a certificate made to plaintiff on November 15, 1938, and is to recover taxes paid by plaintiff.

While it is true that the abstract company made two certificates, the earlier one to plaintiff and the last one to the insurance company, it is readily apparent that, stripped of nonessentials, the issue as to the liability of the abstract company is the same in each case, in that in neither certificate did it show the proceedings whereby the taxes on the property were reduced by the county commissioners. Our decision in State ex rel. Tharel v. Board of County Commissioners of Creek County, supra, holding that such reductions were void, had not been handed down at the time either certificate was made. The liability of the abstract company in each case was the same, and it is not contended that any other or different liability existed. This fact is recognized by attorneys for plaintiff in their letter to the insurance company, dated August 9, 1941, in which, as above shown, they requested permission to bring the action in the name of the insurance company. In this letter they point out that plaintiff purchased the property relying upon a certificate by the abstract company which failed to show the proceedings in connection with the reduction of the assessments, and that the insurance company relied on the same abstract and on the same and later certificates reciting that all taxes had been paid in full. It is not contended by plaintiff that any other or further duty devolved upon the abstract company in 1938, when it made the certificate to plaintiff, than that which rested upon it when it made the certificate to the insurance company in 1939. It is therefore clear that both actions sought to impose upon the abstract company the same liability.

In McKee v. Producers' & Refiners' Corp., 170 Okla. 559, 41 P. 2d 466, we considered a somewhat similar fact situation. In that case we held that a judgment in one case might estop the plaintiff in a subsequent case, although the causes of action involved in the two suits were different, and the relief demanded in them was not the same, if each in fact involved the same liability. In that case we said:

"The issue as to defendants' liability was the same in both cases, was common to both actions. It does not matter that the relief demanded in the second action is different (2 Freeman, 1441), for manifestly unless there is liability the plaintiff is not entitled to judgment, regardless of in what restricted period of time the damages were sustained. In Woodworth v. Town of Hennessey, supra, (32 Okla. 267, 122 P. 224, 226), we said: 'Where some specific fact or question has been adjudicated and determined in a former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties, its determination in the former suit, if properly presented and relied on, will be held conclusive upon the parties in the latter suit, without regard to whether the cause of action is the same in both suits or not. This species of estoppel is known to the law as an estoppel by verdict and is equally available to a plaintiff in support of his action, when the circumstances warrant it, as when offered by a defendant as a matter of defense' ".

To the same effect is O'Connor v. O'Connor, 194 Okla. 595, 154 P. 2d 76. This is the general rule. 50 C.J.S. p. 198, §719; 34 C. J. p. 915, §1325.

In support of its contention that it did not have control over the case in the Federal Court plaintiff cites Roche v. American Surety Co., 193 Iowa, 965, 184 N. W. 317, 27 A. L. R. 1537, and other cases, holding that active participation in a former action is not sufficient to render the judgment therein an estoppel in a subsequent action brought by plaintiff. However, in the instant case, the evidence, as summarized above, sufficiently establishes that the case in the Federal Court, while brought in the name of the insurance company, was brought, supervised and controlled by plaintiff; that the only attorneys appearing in the case were plaintiff's attorneys, and that no rep-

resentative of the insurance company was even remotely connected with the conducting of that action.

In Sparks v. Gallagher, 114 Okla. 103, 243 P. 228, and again in Rivers v. School Dist. No. 51, 156 P. 236 (affirmed on rehearing, 68 Okla. 141, 172 P. 778), we held that a party who prosecuted a lawsuit or caused it to be prosecuted in another's name was estopped by the judgment rendered therein from litigating in a subsequent action the same question involved in the first suit. This is the general rule, 34 C. J. p. 1006, section 1426; 50 C. J. S. p. 317, section 782.

In Sparks v. Gallagher, supra, we quoted with approval the rule announced in James v. Germania Iron Co., 107 Fed. 597, as follows:

"A party who institutes and conducts a litigation in another's name is as conclusively estopped by the decision and judgment therein from again litigating the same issues with his adversary as is the party in whose name he carries on the contest."

Plaintiff apparently concedes the correctness of this rule, but argues that the evidence does not establish its complete supervision and control of the first action. While we consider the evidence conclusive upon this point, it was beyond question amply sufficient to sustain the judgment of the trial court. The action was a law action tried to the court without a jury, and we have many times held that in such case a judgment of the trial court will not be reversed where there is competent evidence reasonably tending to sustain it. Atlas Life Ins. Co. v. Unger, 198 Okla. 234, 177 P. 2d 98; Warren v. Farmers Co-Op. Ass'n, 198 Okla. 45, 175 P. 2d 85; Evans v. Fielder, 169 Okla. 437, 37 P. 2d 430.

Our conclusion is that the judgment of the trial court is sustained both by the law and the evidence.

Affirmed.

DAVISON, C.J., ARNOLD, V. C. J., and GIBSON, HALLEY, JOHNSON, and O'NEAL, JJ., concur. WELCH and CORN, JJ., dissent.

———

WELCH, J. (dissenting). I think this case should be tried and determined on its merits as was the case in Federal Court referred to in the majority opinion. National Life v. Parkinson, 136 Fed. 2d 506.

In my view it is erroneous to hold this plaintiff barred or estopped by that former action. It is apparent from reading this majority opinion and that opinion, 136 Fed. 2d 506, that the issues are not identical as regards general abstracting usage, custom and practice, on account of the year's difference of time in the abstracts and certificates sued upon.

The Federal decision emphasizes the trial court's finding as to "the universal usage, custom and practice of abstracters prevailing on October 4, 1939, in reflecting taxes" etc., (136 Fed. 2d 512.)

It seems from the briefs here that Reinhart & Donovan contend this usage and custom was the controlling point in the Federal decision, while the abstract company contends that decision "disregarded usage and custom entirely." It may be that neither such contention is exactly correct. However, the Federal decision certainly did not disregard the usage and custom, because it emphasized it as a fact, and as a controlling fact by which to measure the statutory liability. If this was not the controlling point of that decision, it at least was an important point in that case.

It needs no vigorous assertion that the custom and usage may or may not have been the same when the abstract

was furnished and certified to plaintiff here in 1938, immediately after our final decision in 1938 of the Ivester case, 183 Okla. 519, 83 P. 2d 193. The plaintiff here asserts that the usage and custom was different in 1938, and that the proof in this record shows it. I think that fact should be considered here as important, if not controlling, as it was so considered in the Federal case, and should be determined in this case as it was there.

Of course, the time element is often controlling as to fact questions, and as to rights and liabilities. The same premises may at one time be properly determined to be exempt from execution as a homestead and at another time to be not so exempt. See Clay v. Brown, 161 Okla. 221, 17 P. 2d 378, and Clay v. First National Bank in Ardmore, 170 Okla. 225, 39 P. 2d 64. Further examples are unnecessary.

I respectfully dissent to the conclusion that the issues in the Federal question are identical so as to here estop plaintiff.